## William S. Maynard v. Thomas J. Hoskins and others.

Lands which a judgment debtor has purchased, and caused to be conveyed by the vendor directly to a third person, to defraud his creditors, are not subject to levy and sale on execution.*

By the statute (*Comp. L.* § 2637) no trust in such case results to the debtor, and the trust in favor of creditors (§ 2638) can only be reached by a bill filed by a judgment creditor after an execution has been taken out and returned unsatisfied; or, in case of the death of the debtor, and the insolvency of his estate, by a bill framed on like principles.

*Heard April 20th, 23d and 24th, 1861. Decided January 15th.*

Appeal from Washtenaw Circuit in Chancery.

The bill was filed to subject certain lands to the payment of a judgment, rendered in November, 1857, in favor of complainant, against the defendant Thomas J. Hoskins. The bill alleges that the lands were bought by said Thomas J. Hoskins, with his own money, who caused them to be conveyed by the seller to his wife Martha L. Hoskins, for the fraudulent purpose of keeping them beyond the reach of his creditors. It states that Hoskins, on making the purchase, took possession of the premises and made valuable improvements thereon, but that Mrs. Hoskins, learning that complainant was taking steps to collect his judgment, conveyed them without consideration, to one Henning, to keep them beyond complainant's reach. Henning, when he took the conveyance, had notice of the fraud intended. No change of possession was had or intended on this conveyance being made. Complainant took execution on his judgment, December 7, 1857, and caused it to be levied upon the premises; he claims that he has thereby acquired an equitable lien on the premises, and asks that they be subjected to the payment of his judgment.

Henning and Mrs. Hoskins filed answers in the case, and a hearing was had in the Court below on pleadings and proofs, and decree entered for complainant as prayed. Defendants appealed.

*See the case of *Trask v. Green*, ante, p. 358 for a discussion of analogous princi-      ples to those involved in this case,

*H. J. Beakes* and *T. M. Cooley,* for complainant:

1. But for the fraudulent conveyance to the wife, Hoskins had such an interest in the lands as might have been sold on execution. He had bought and paid for the land, and took possession of it, and was entitled· to have it conveyed to himself or to such person as he might direct. In other words, he was entitled to the title. Under such circumstances his *rightful possession* was such a legal interest as might be sold on execution : — 3 *Johns.* 222; 9 *Cow.* 73, 75; 18 *Johns.* 94.

2. But independent of this principle, the right to sell on execution lands thus fraudulently conveyed, has been generally recognized in this country. In some States, indeed, the courts have based the right upon the statutory authority to sell *trust* estates : 19 *Wend.* 414. In one, the case is recognized as coming within Stat. 29, Ch. II., and therefore saleable on execution : 1 *Humph.* 491; while in others the case is held not within that statute: 8 *Rich. Law,* 393 ; 3 *Monr.* 158; 1 *Ired. Law,* 553 ;ₐ 23 *Vt.* 378; and in still ·others any sort of interest in lands, legal or equitable, that ought to be subjected to debts, seems to be liable to execution independent of statutory provisions: 3 *Ind.* 129 ; 4 *N. H.* 402. On the other hand, in other States, the right to sell lands thus situated on execution has been recognized on the express ground, as would seem, that the conveyance was a mere dodge to defraud creditors, which the law equally with chancery would circumvent, and the aid of chancery has frequently been invoked and afforded, as well to declare the land subject to sale before one has been made, as to perfect a sale afterwards by compelling a fraudulent grantee to convey to the purchaser : — 10 *Conn.* 137 ; 11 *Conn.* 370 ; 17 *Conn.* 278 ; 17 *Ill.* 585 ; 23 *Mo.* 172 ; 41 *Me.* 455 ; 2 *Penn. St. R.* 38 ; 15 *Mass.* 210.

Whatever, therefore, may on principle be the correct course, the practice is far from uniform, and no State would be likely to overthrow the practice adopted by its

courts, without very strong reasons for so doing. In our own State, the right to sell on execution in such case is distinctly recognized: *Cutter v. Griswold*, *Wal. Ch.* 437. The position of defendants involves the necessity of over-ruling this decision, which for sixteen years has been regarded as the settled law of the State.

2. But the principle of this decision is now the law of this State by statute. Lands *fraudulently conveyed* are made liable to execution: *Comp. L.* § 3119. The terms of this section do not confine the description of lands which may be sold to those fraudulently conveyed by the debtor himself, and there is nothing in the nature of the case which should induce the Court to give it this restricted construction. The purpose of the statute was to defeat the fraudulent device and shift of the debtor by making the land subject to execution notwithstanding the title was not in the debtor; and on the ground that, but for his fraud, the legal title would have been in him, and thus attacha-ble: 3 *Ind.* 131.

4. But even if this land were not subject to execution, the present suit may be sustained. We are not seeking to reach equitable assets, or choses in action not liable to execution, but tangible property, the equitable title to which is, as between defendants and complainant, in the debtor himself. The levy of an execution in such case creates in favor of the creditor an equitable lien, which equity may enforce by decreeing a sale, and by compelling the holder of the legal title to deed over if necessary: — 11 *N. H.* 330; 3 *Humph.* 661; 8 *Rich. Eq.* 162; *Wright*, 439; 10 *Yerg.* 310; 2 *Leigh*, 268; 24 *Vt.* 390; 10 *Conn.* 137; 12 *Vt.* 700; 2 *Stock. Ch.* 291; 4 *Johns. Ch.* 786; 2 *Johns. Ch.* 283; 18 *Wend.* 236; 11 *Conn.* 370; *Story Eq. Juris.* 1216 *b.*

*O. Hawkins* and *G. V. N. Lothrop*, for defendants.

The lands "fraudulently conveyed" which the statute

subjects to execution, are such as have been so conveyed by the debtor himself. These conveyances are expressly declared void by the statute, thus bringing the legal title within reach of execution. Where the debtor has paid the consideration money, and caused the title to be conveyed to another, the statute is equally explicit. It does not avoid the conveyance, for that would put no title in the debtor. It does not raise a trust for the debtor, and then execute the trust, and so vest the debtor with title, or declare, that such trust should be subject to levy and execution against the debtor. On the contrary, it declares that no trust shall result to the debtor. But it raises a presumptive trust directly in favor of the creditors. That is, it leaves the title in the grantee, and charges it in his hands with a *trust* for the creditors. Of course this trust is an equitable interest, and unless otherwise provided by statute, the remedies to enforce it must be equitable. This is obvious on principle, and settled on authority:— 10 *Paige*, 567; 3 *Barb.* 573; 3 *Met.* 27; 1 *Ired.* 553; 15 *Ala.* 412; 2 *Rich.* 624: 16 *Ohio*, 469; 15 *N. Y.* 476.

MANNING J.:

The bill is in aid of an execution at law, and not a judgment creditor's bill under the statute, after an execution returned unsatisfied in whole or in part. It states that the premises levied on were purchased and paid for by Thomas J. Hoskins, the judgment debtor, and that a conveyance was taken by him in the name of his wife, Martha L. Hoskins, to keep them from his creditors; and that Mrs. Hoskins, afterwards, with a like intent conveyed them to Henning, who the bill charges had notice of the intended fraud.

Previous to the Revised Statutes of 1846, if one purchased real estate and paid for it, and took a conveyance in the name of another, in equity there was a resulting trust in favor of the person paying the purchase money,

unless the purchase was intended as a gift or advancement to the person to whom the conveyance was made. But this equitable interest does not appear ever to have been subject to levy and sale on execution under the laws of Michigan. This question was not made by counsel or decided by the chancellor in *Cutter v. Griswold, Wal. Ch.* 437. The only question considered and decided by the Chancellor in that case was, that the conveyance to the son could not be sustained against creditors, as a gift or advancement, as the pecuniary circumstances of the father were such, at the time of the conveyance, as to preclude his making such gift or advancement. It seems to have been taken for granted in that case, by counsel and Court, that a resulting trust could be sold on execution. To that extent, but not as an adjudication, the case is evidence of the then existing law. But such evidence at most is very slight, and deserving of little consideration, when restricted to a solitary case.

But whatever may have been the law at that time is of no importance in the present controversy, as such trusts were abolished by the Revised Statutes of 1846. By them it is provided that "When a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made; but the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions of the next section:" § 2637 of *Comp. L.* The next section is as follows: "Every such conveyance shall be presumed fraudulent, as against the creditors of the person paying the consideration; and when a fraudulent intent is not disproved, a trust shall result in favor of such creditors, to the extent that may be necessary to satisfy their just demands:" § 2638.

The trust here reserved in favor of creditors can only be reached by a bill filed by a judgment creditor after an execution has been taken out and returned, on or after the

return day, unsatisfied in whole or in part. Or in case of the death of the debtor, and the insolvency of his estate, by a bill framed on like principles. It is not subject to levy and sale on execution: *Brewster v. Power*, 10 *Paige*, 562; *Garfield v. Hatmaker*, 15 *N. Y.* 475.

The decree of the Circuit Court must be reversed, and the complainant's bill be dismissed with costs.

MARTIN CH. J. and CAMPBELL J. concurred.

CHRISTIANCY J. was absent.