## FANNIE CHURCH v. ADELAIDE D. HOLCOMB, JOHN H. EARLE, LUCIUS RUSSELL, SHERMAN C. PRINDLE ET AL.

*Settlement of estate— Probate license to mortgage—Amendment of bill in equity— Costs on remanding record for amendment of bill.*

The assent of parties does not determine a question of law, nor does their omission to contest a point urged against them.

A probate license to sell or mortgage real estate is not necessarily void for being granted after the expiration of the statutory time allowed for closing up the estate, if it has not been closed up in fact, and if the will contemplates that it shall remain in the hands of the executors for a longer period.

Where a will provides that as the testator's children become of age the executors shall set off to them their shares of the estate, and it is obviously the intent that the executors shall receive and pay out moneys in managing the estate and supporting, maintaining and educating the children, any resulting indebtedness incurred by the estate to the executors in the strict discharge of what they believe to be their duty will not stand on the same footing with debts contracted by the deceased in his life time nor be subject to the statutory limitation requiring claims against the estate to be presented and allowed within four years and a half.

Probate courts have general jurisdiction in testamentary and other probate matters, and their action therein is not void where no fatal defect appears on the face of the proceedings ; it may be reversible on appeal, but must stand if an appeal is not taken.

Where a presumptively legal claim, approved by the probate court, exists against an estate which still remains unsettled after the time limited for that purpose, and is still, for some purpose, in the hands of the probate court, it is within the jurisdiction of that court to license the giving of a mortgage on the estate to meet the expenses of administration; and if no appeal is taken and the probate order is confirmed the mortgage becomes a valid claim.

| 45 | 29 |
|---|---|
| 84 | 486 |

| 45 | 29 |
|---|---|
| 88 | 154 |

| 45 | 29 |
|---|---|
| 116 | 213 |

| 45 | 29 |
|---|---|
| 119 | 673 |

| 45 | 29 |
|---|---|
| 120 | 653 |

| 45 | 29 |
|---|---|
| 126 | 292 |

| 45 | 29 |
|---|---|
| 137 | ⁶513 |

| 45 | 29 |
|---|---|
| 153 | ²138 |

| 45 | 29 |
|---|---|
| 155 | ⁴553 |

| 45 | 29 |
|---|---|
| 156 | ⁴399 |

Amendments to a bill in equity are discretionary with the court so long as they are not allowed to prejudice the substantial rights of the defendant. They should not be allowed at the hearing, however, if after amendment the case will be defective on the proofs.

Where a bill in equity, filed by the holder of mortgages supposed to be void, claimed an equitable lien in the nature of a mortgage, and the record showed that the parties had gone fully into their equities; that the proofs were all in; that there was no conflict on the facts constituting the complainant's case, and that the case that would have been made on a foreclosure bill was fully before the court, the record was remanded by the appellate court with leave to so amend the bill as to pray a foreclosure of the mortgages in case they were adjudged valid.

Where a chancery record is remanded with leave to amend the bill without prejudice to any proceedings, the complainant can be placed in no better position as to costs than if the bill had been dismissed without prejudice, and must pay all costs to the time decree is entered on the amended bill.

Appeal from Barry. Submitted October 28. Decided November 10

BILL for accounting, and to enforce an equitable lien. Complainant appeals. Record remanded with leave to amend bill but without prejudice.

*Geo. C. Worth* and *G. Thompson Gridley* for complainant.

*James A. Sweezey, L. E. & C. M. Knappen* and *Charles H. Bauer* for defendants.

COOLEY, J. The bill in this case is filed against the widow and heirs at law of Horton D. Holcomb, late of the county of Barry, deceased, to establish a lien upon the lands of which the decedent died seized, for moneys loaned by complainant to his executors, and for which mortgages were given, and also to charge the widow, the judge of probate, the counsel for the widow and several other parties with conspiracy to defraud both the estate and complainant as mortgagee. The bill was dismissed in the court of chancery, on full hearing on pleadings and proofs, except as to the widow, and complainant appeals.

The bill alleges that Holcomb died February 20, 1866, seized of 320 acres of land, lying in separate parcels in Barry county, and that he left a last will whereby he devised his lands to his wife and children, but with certain powers to the executors, all of which will appear by the copy of the will which is given in the margin.*

That the will made the wife, Adelaide D. Holcomb, and the decedent's brothers, Horace G. and Hiram W. Holcomb, executors.

That the will was probated and allowed in the county of Barry aforesaid May 15, 1866, and letters testamentary issued to the persons made executors.

That no order was entered by the probate court fixing the

---

\* In the name of God, Amen:—

I, Horton L. Holcomb, of the township of Prairieville in the county of Barry, and state of Michigan, feeling the uncertainty of life, and being feeble in bodily health but sound in mind and memory, do hereby make, publish and declare this my last will and testament, as follows; that is to say:

First. After the payment of all my just debts, if any there should be at my decease, together with funeral charges, and the expense of providing suitable marble to be erected at my burial place, I give and bequeath unto my beloved wife, Adelaide D. Holcomb, all my household goods and wearing apparel of every kind and description, to her sole use forever.

Second. I give, devise and bequeath unto my said wife, also, for and during her natural life, that portion of my homestead farm known and described as the north half of the north-west quarter of section one in township one north, of range ten west, in the county of Barry and the state aforesaid, with all the appurtenances thereto belonging; and after her decease the said described premises I give and devise in equal proportions to all my children who may survive me, being then born or that may thereafter be born, to them and their heirs forever.

Third. I give and devise all my real estate, wheresoever the same may be, not hereinbefore devised, in equal proportions, share and share alike, to all my children, me surviving, to them and to their heirs forever.

Fourth. I give and bequeath unto my beloved wife, also, one span of horses, two cows, and all the farming tools, vehicles and implements of husbandry that to me may belong at my decease.

Fifth. As to all my personal estate not hereinbefore specifically bequeathed, and all the increase and profits therefrom, and all the income and proceeds arising from the real estate, I direct that the same shall be held and owned in common by my said wife and all my children, to be used for the support and maintenance of my said wife, and for the support and maintenance and education of all my children, under the direction and control of my said wife, if she should continue competent to manage and control the same, and in case she should become incompetent, then under direction of the other executors of my will, hereinafter mentioned; and the remainder of the annually-accruing increase, proceeds and profits of my estate over and above the necessary amount for

time within which the debts and legacies should be paid and the estate settled as the statute requires.

That an inventory was filed July 31, 1866, showing the property of the estate to be, real estate, $6360; personal estate, $1100.

That on November 26, 1867, the said executors filed their bond as testamentary guardians of the heirs at law, who were minors; they having been appointed to that office by the will.

That on the same day last aforesaid the executors prayed leave to sell one eighty-acre lot belonging to said estate and invest the proceeds in the purchase of another parcel immediately adjoining the homestead, and the probate court

---

properly stocking and supplying the farm, and the support, education and maintenance aforesaid, I direct shall be converted into money, and from time to time be put out on interest for the use and benefit.equally, share and share alike, of my said wife and children, until the oldest child living shall arrive at the age of 21 years, when the share of estate belonging to such child, both real and personal, shall be set off, partitioned and distributed to such child by commissioners to be appointed therefor by the probate court of the proper county; and when a second child shall become of the age of 21 years, a like distribution and partition shall be made to such child, and so on until the share of each and every child shall have been set off, partitioned and distributed in the manner aforesaid, and thereafter the premises above devised to my beloved wife shall be and remain with the use, rents, proceeds, profits and income thereof, the sole property of my said wife for and during her natural life, then the real estate [shall revert] to my children, as directed in the second provision aforesaid described, and I do declare that it is my intent that the whole real estate, including the land devised to my wife, shall be used in common for the purpose and to the uses aforesaid, until partition and distribution shall be made substantially in the manner and at the time aforesaid, so that the use of all the real estate, and the profits and income therefrom, as well as the personal estate, except the personal estate specifically bequeathed to my wife, shall be charged with the common support and maintenance of my wife and children, and the education of the children, until the several shares shall from time to time be set off and distributed as aforesaid.

Sixth. And I do hereby direct that my said wife and Horace G. Holcomb and Hiram W. Holcomb shall under this, my last will and testament, be the joint guardians of all my children and of their estate during the minority of said children severally.

Seventh. And lastly hereby revoking all former wills by me at any time before made, I do hereby appoint my wife, Adelaide D. Holcomb, and my brothers, Horace G. Holcomb and Hiram W. Holcomb, executors of this, my last will and testament.

In witness whereof I have hereunto set my hand and seal, at Prairieville aforesaid, this thirty-first day of January, in the year one thousand eight hundred and sixty-six.

HORTON L. HOLCOMB. [L. S.]

assumed to grant leave, the sale was made and an order entered to confirm the same. This action of the executors and the probate court is averred to be wholly unauthorized and void, and the purchasers are made defendants as assuming to hold and claim the property which belongs to the estate.

That afterwards in December, 1871, Hiram W. Holcomb assumed to resign his trust as executor and guardian, and the probate court assumed to accept the resignation, which action. of the court is alleged to be unauthorized and void.

That on or about the first day of December, 1874, the widow entered into a conspiracy with one Holbrook, since deceased, with the judge of probate and with other persons who are named as defendants, to cheat and defraud the estate and all persons having claims upon or against it, or against the heirs thereof in the manner stated below.

That Horace G. Holcomb was then deceased, and said Adelaide had for a long time been acting as sole executor and sole testamentary guardian.

That in furtherance of said conspiracy said Adelaide, with the assistance of other defendants named, did on the day last aforesaid file in the probate court what purported to be an itemized statement of her account, showing a balance in her favor of about $3900, with petition for the hearing and allowance thereof, and the defendant Prindle as judge of probate made a pretended order of allowance thereof, though the estate, as the judge well knew, was not indebted to said Adelaide in any sense whatever, and the time allowed by the statute for settling the estate had then long passed.

That afterwards on or about the eighth day of April, 1875, the said Adelaide filed her petition for leave to sell or mortgage certain lands belonging to said estate, a copy of which is also herewith given.*

---

* State of Michigan, County of Barry—ss.

In the matter of the estate of Horton L. Holcomb, late of said county, deceased.

The petition of Adelaide D. Holcomb, widow and executrix of the last will and testament of said deceased, respectfully shows that the personal estate of said deceased, according to the inventory and appraisement, now on file in this court, and which is all thus far that has come into the hands of your petitioner, amounts to the sum of about $1138.25 less the sheep

That on May 27, 1875, the said judge of probate assumed to grant an order for the mortgaging of said lands, a copy

and other articles of personal property sold, as shows in her statement of December 1, 1874, and that the disposition and condition thereof are as follows:

That the same consisted of stock, farming utensils and necessary things with which to run and carry on the farm, and nearly the same amount is now on the farm, used and being used for the purpose, which said farm and real estate of which the said Horton L. Holcomb died seized and possessed, has been carried on and run in a prudent manner in common for the use and benefit of the widow and children of said deceased, and for the support, education and maintenance of the said minor children, under and by virtue of the provisions of the last will and testament of the said deceased.

Your petitioner further shows that as far as can be ascertained by her and as she verily believes, the first debts which the said deceased at the time of his decease and now due and outstanding against his estate, together with the expenses of working the farm and real estate from the time of his death until the first day of last December, and the expense of supporting the family and educating the children, after deducting the entire income of the said estate, amount to the sum of $3939.20, and that the charges of administering said estate, including further probable charges, will amount to the sum of at least $300, as she is informed and verily believes to be true.

Your petitioner further shows that in view of the facts and statements aforesaid, and as she verily believes, the personal estate of said deceased is insufficient to pay the just debts due from said deceased, and the charges of administering his estate, and that it will be necessary for the purpose of paying said debts and charges, including losses and expenses in running said farm and real estate, to raise the sum of $4239.20, by selling the following described real estate or some part thereof, of which the said Horton L. Holcomb died seized and possessed, the description, condition and value of each parcel, and of the whole of his real estate, according to the information and belief of your petitioner, are as hereinafter stated, that is to say—all that certain piece or parcel of land situate in the county of Barry, and state of Michigan, and known and described as being the south half of north-west fractional quarter of section one north, range ten west, and being a portion of the homestead farm of which said Horton L. Holcomb died seized and possessed. That the said piece of land contains no buildings, but is well fenced and in good state of cultivation, strong soil, good wheat land and valuable for farming purposes, and worth about fifty dollars per acre. Also, that other certain piece or parcel of land of which the said testator died seized and possessed, situate in Barry county, Michigan, and known and described as being the west half of south-west quarter of section number thirty, town two north, range ten west, containing eighty acres of land, in a good state of cultivation, well fenced and improved, rich soil, good wheat land, fair and even surface and valuable for farming purposes, and worth about fifty-five dollars per acre.

Your petitioner further shows that the name and residence of the heirs at law of said deceased and other persons interested in said estate, as your petitioner is informed and believed, are as follows: All reside in the county of Barry and state of Michigan, including all the creditors and heirs at law, to wit: The minor children of said deceased who live with your petitioner in the town of Prairieville, Barry county, Michigan.

Wherefore, your petitioner prays that she as executrix of said estate, may be empowered and licensed to sell real estate, or mortgage the same

of which is also given,* and that defendant Adelaide gave bond in regard to said order with the defendants John H. Earle and Lucius Russell as her sureties.

---

in whole or in part, hereinbefore described, with the hereditaments and appurtenances, or so much thereof as will be sufficient for the payment of the said debts due against said estate, and the charges of administering the same as aforesaid, according to the statute in such case made and provided.

Dated March 1st, 1875.                    ADELAIDE D. HOLCOMB.

* Present, S. C. Prindle, Judge of Probate.

In the matter of the estate of Horton L. Holcomb, deceased.

This day having been appointed by the court for hearing the petition of Adelaide D. Holcomb, executrix of the last will and testament, and administratrix of the estate of said Horton L. Holcomb, late of said county of Barry, deceased, praying, for reasons therein set forth, that she may be licensed to mortgage certain real estate of said deceased, in said petition described. Now comes into court the said petitioner, and no persons appearing to oppose. And it appearing to the satisfaction of this court, by due proof on file, that a copy of the order of this court, touching the hearing of said petition, made on the eighth day of April last, has been duly published as therein directed. And it further satisfactorily appearing to this court, after full hearing on said petition, and on examination of the proofs and allegations of the petitioner, that the debts and valid claims which the said Horton L. Holcomb justly owed at the time of his decease, so far as the same can be ascertained, and which are now due and outstanding against his estate, including expenses incurred in maintenance of family, and expense of working farm and educating the children of said deceased, after deducting the entire income of the estate, amount to the sum of $4239.20 exclusive of interest. And the personal estate of said deceased in the hands of said executrix is insufficient to pay all said debts and valid claims due from said deceased with the charges of administering his estate, and that therefore it is necessary to borrow said sum and secure the same by mortgaging the real estate described in said petition to pay said debts, claims, interest and charges, and no person interested in said estate having given a bond to pay the same, as authorized by law.

Therefore, in consideration of the premises, it is ordered, adjudged and decreed by this court that said Adelaide D. Holcomb, executrix and administratrix as aforesaid, be and hereby is empowered, authorized and licensed to mortgage pursuant to the statute in such case made and provided, that part of the real estate whereof the said deceased died seized and possessed, as hereafter designated and described, for the purpose of paying said debts, claims, interest and charges.

And it is further ordered that the said executrix and administratrix give a bond in the penal sum of $8000, with one or more sureties to be approved by said judge, for the faithful discharge of her duty in the premises, as required by law. Said sums so borrowed to be for a term of not exceeding five years, and at a rate of interest not exceeding ten per cent. per annum. And it is further ordered that said executrix and administratrix immediately after such mortgage made make due returns to this court of her proceedings in the premises, by virtue hereof. The real estate authorized to be mortgaged, under and by virtue of this decree, is specified, designated and described as follows, to wit: All that certain piece or parcel of land situate, lying and being in the county of Barry and state of Michigan, known and described as being the south half of the

That in reliance upon this order complainant was induced to loan to said Adelaide $3000, accepting two mortgages upon said lands, of $1500 each, given by said Adelaide as sole executrix and testamentary guardian.

That of the said sum of $3000, $150 was appropriated by said Russell and the remainder was delivered to said Earle with the avowed purpose of delivering the same to said Prindle to be paid out and distributed.

That said Adelaide made a report of her proceedings in giving said mortgage, and the said judge of probate entered an order pretending to confirm the same.

That all the proceedings of said Adelaide and said probate court in respect to mortgaging said lands were wholly void, and that said Adelaide under said will had no power either to sell or mortgage the lands of the estate, except under the authority of a court of equity, and that complainant's mortgages therefor create no lien and are void.

That said Adelaide is insolvent; that the money obtained from complainant has been used for the benefit of the family of said deceased and for said estate, in part, but she does not know to what extent, and she is entitled in equity to a lien on the lands therefor, and to an accounting with the defendants, and a personal decree against them.

And the bill prays for a decree according to the theory of complainant's case as above stated and for other and further relief.

Such is the case made by the bill. The defendants answered, admitting the will, the proceedings in the probate court, and the giving of the mortgages, but denying explicitly all collusion, conspiracy and fraud. Voluminous testimony was taken, and it is sufficient for our purposes to say of it that it fails to charge the defendants or any number of them with collusion to defraud the estate or to wrong complainant, or with any intentional wrong whatever. The court of chancery

---

north-west fractional quarter of section one (1), town one north, range ten west; also the west half of the north-west quarter of section thirty-six in town two north, range ten west, in said county of Barry, containing eighty acres.

                     S. C. PRINDLE, Judge of Probate.

dismissed the bill except as against the defendant Adelaide, but assuming the mortgages to be void, made a personal decree against her that she pay to complainant the amount of her mortgages. Complainant appeals.

The first question that presents itself on the appeal is whether the complainant and the court were right in assuming that the mortgages were void. The defendants do not contest the invalidity, and have no interest in doing so, but their assent does not determine the question of law. That, however, is supposed to be settled by previous decisions of this court.

Of the previous decisions, that in *Matter of Godfrey Estate* 4 Mich. 308, merely holds that the court will not license the sale of lands to pay debts against an estate after the legal remedy for their recovery has been barred by lapse of time. *Hoffman v. Beard* 32 Mich. 218, holds that a license to sell issued to an administrator after the estate has been actually closed, is wholly void, and may be treated as void in collateral proceedings. It is said in that case that the time allowed to an administrator in which to close up the estate must be restricted to four years and a half; but this rule is subject to exceptions, as was explained by a later case. *Larzelere v. Starkweather* 38 Mich. 96.

Does this case come within the general rule laid down in *Hoffman v. Beard ?* If it does, that is an end to all controversy so far as concerns the validity of the mortgages; if not, that question is not disposed of by any adjudication. In our opinion the two cases differ in most important particulars.

In the first place the estate in question in *Hoffman v. Beard* had been closed before license to sell was granted, and the record showed the fact. In this case there had been no settlement, and the estate, whether rightfully open or not, was in fact still open. In the second place that was a case where the administration was wholly under the statute; in this case there is a will. Moreover the will by its express terms contemplates that the estate shall remain in the hands of the executors for a period longer than that limited by law for closing estates generally, and that action for partitioning

the estate shall be had from time to time in the probate court. No want of competency in the testator to make such provision is suggested and probably none will be set up.

Notwithstanding these provisions it was probably still necessary that all claims against the estate should be presented and allowed within the time limited by the general law. But it was obviously the intent of the will that the widow or the executors should receive and pay out moneys in managing the estate, and supporting, maintaining and educating the children, and it was not at all improbable that the estate would be found indebted to one or more of them while in the strict discharge of what they might believe to be their duty under the will. Any such indebtedness would not stand on the same footing with debts contracted by the deceased in his lifetime, and would not be subject to the same limitation.

Referring now to the account allowed against the estate in favor of the widow, we find it made up of payments made by her for the estate; of expenses in carrying on the farm, and supporting and educating the children, from which are deducted the receipts of the farm. It was to pay the balance on this account that the mortgage was licensed. There cannot be the least doubt that some portion of this account, at least, was a just claim against the estate. It is said, however, that admitting this to be the case, there existed a trust in respect to the lands which only a court of equity could deal with, and that the probate court exceeded its jurisdiction in assuming to act at all.

Whether the court of chancery would not have been the more appropriate tribunal to which to appeal is a question we shall not consider now. It is enough for the purpose of this case that the estate still remained unsettled, and was still in the hands of the probate court for some purposes, and that a claim presumptively legal and which the probate court had approved, existed against it. The probate court decided that it had authority to license the giving of the mortgage, and no appeal was taken from its decision. The license was not void, for it appeared to be a step in the regular administration of the estate under the will, and nothing in its recitals

was calculated to notify any one that it was not warranted by law. It may be that this is one of those cases lying along the borders of probate authority of which the court of chancery might have assumed jurisdiction, but the fact is immaterial. The probate court is one of general jurisdiction in testamentary and other probate matters. *People v. Wayne Circuit Court* 11 Mich. 393; and where no fatal defect appears on the face of the proceedings, its action in such matters is not void. It may be reversible on appeal, but it must stand if not appealed from.

There was then a valid order licensing the giving of complainant's mortgages, and the giving of the mortgages was confirmed. Complainant was under no obligation to look further, but was entitled to hold her mortgages as valid claims against the lands described therein. It remains to be seen whether we can afford her any relief in this suit.

The complainant's case is based upon a charge of conspiracy which is wholly without support in the evidence, and upon a concession that her mortgages are void. Had she claimed a foreclosure of the mortgages, decree would have been made in her favor. She does claim, however, that she is entitled to an equitable lien in the nature of a mortgage, and as this relief is akin to that which she should have had, it may be that the proper relief can be given under the general prayer, by an amendment now made to the bill by special favor.

It is plain from this record that the parties have gone fully into their equities, and that the case that would have been made on a foreclosure bill is fully before us. If therefore an amendment can be allowed, it will be entirely proper, just and equitable to grant a decree of foreclosure.

The rules for amendment are exceedingly liberal when justice will thereby be done and wrong prevented. A necessary party is often permitted to be added at the hearing; and even on appeal the case may be remanded for the purpose. *Lewis v. Darling* 16 How. 1; *Palmer v. Rich* 12 Mich. 414. A bill for specific performance is sometimes permitted to be converted into a bill to rescind when it is manifest from the evidence that such should have been the

relief prayed for.   *Parrill v. McKinley* 9 Grat. 1 ;   *Hewett v. Adams* 50 Me. 271.   See *Whelan v. Sullivan* 102 Mass. 204 ; *Neale v. Neales* 9 Wall. 1.   In *Sanborn v. Sanborn* 7 Gray 142, leave to change a bill for specific performance into a bill for relief on the ground of fraud, seems to have been denied only because jurisdiction in cases of fraud had been conferred on the court since suit was brought.   An amendment to bring new transactions into an accounting in a partnership case was allowed at the hearing in *Drew v. Beard* 107 Mass. 64 ; and one quite as radical was permitted in *Darlington's Appeal* 86 Penn. St. 512, in the appellate court.   In *The Tremolo Patent* 23 Wall. 518, an amendment was allowed after decree, which changed the character of the bill from one relying on a patent to one based on a re-issue ; it being manifest that the merits, had been fully gone into. The limit to amendments is this : they must not be allowed to prejudice the substantial rights of the defendant ; but observing due caution in that regard, the time and the extent of change are in the discretion of the court.   *Hewitt v. Dement* 57 Ill. 500 ;   *Munch v. Shabel* 37 Mich. 166 ;   *Codington v. Mott* 1 McCarter (N. J.) 430 ;   *Camp v. Waring* 25 Conn. 520.   A plain case for refusing an amendment at the hearing is where the case, after amendment, would be defective on the proofs.   *Curtis v. Goodenow* 24 Mich. 18.

An amendment in this case will be entirely just to all parties.   The proofs are in, and on all the facts constituting complainant's case, there is no conflict.   But it is not the case made by the bill, though it is of the same nature, and the relief to be given upon it is similar to that which the complainant has specifically prayed.   No wrong will be done and no confusion created by making the bill at this time correspond to the case made.

The decree, so far as it dismissed the bill against all the defendants but the widow and heirs of Holcomb, will be affirmed with costs.   The record will then be remanded with leave to complainant to so amend her bill as to pray a foreclosure of the mortgages in case they are adjudged valid. This amendment will be made without prejudice to any of

the proceedings, and the court of chancery will thereupon enter the usual decree of foreclosure and sale, upon computation of the amount due. But complainant must pay to the defendants all costs up to the time the decree is entered. In respect to costs she can be placed in no better position than she would have been had her bill been dismissed without prejudice.

The other Justices concurred.